# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| TOMAS ANTONIO TOMAS LOPEZ,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI et al.,<br><br>Respondents. | CASE NO. 2:25-CV-02229-JNW-GJL<br><br>ORDER GRANTING TEMPORARY RESTRAINING ORDER |

## 1. INTRODUCTION

This matter comes before the Court on Petitioner Tomas Antonio Tomas Lopez's motion for a temporary restraining order. Dkt. No. 2. Respondents opposed the motion, but they do not provide any information about Petitioner's immigration history. Dkt. No. 7. For the reasons discussed below, the Court GRANTS the motion.

## 2. BACKGROUND

Lopez entered the United States on November 9, 2015, as an Unaccompanied Alien Child. Dkt. No. 2-1 at 1. He filed an asylum application with USCIS. *Id.* at 2. On June 16, 2022, an immigration judge dismissed Lopez's removal proceedings. *Id.*

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 1

Lopez has an approved I-130 petition (a family-based immigrant visa petition) and filed an application for lawful permanent resident status on May 23, 2025. *Id.*

On October 29, 2025, Immigration and Customs Enforcement (ICE) took Lopez into custody; he is presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 2-1 at 2. He alleges he was detained without written notice explaining the basis for revoking his release and without a hearing before a neutral decisionmaker. Dkt. No. 1 ¶ 2.

On November 7, 2025, Lopez learned that his commissary account at the NWIPC had been emptied, which he alleges is a sign that DHS will begin removal or transfer proceedings. Dkt. No. 2 ¶ 5. That same day, he moved for a temporary restraining order, alleging that he faced a risk of transfer to another detention facility. *Id.* ¶¶ 5, 6. He also petitioned for a writ of habeas corpus. Dkt. No. 1. The Court issued a provisional TRO "to preserve the Court's jurisdiction and to maintain the status quo." Dkt. No. 4 at 2.

### 3.   DISCUSSION

#### 3.1   Legal standard.

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 2

of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). These four factors—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20; *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("a showing on all four prongs" is required).

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (citations modified). This approach allows a stronger showing of one *Winter* factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–844 (9th Cir. 2024).

### 3.2   The *Winter* factors support a TRO.

Lopez raises serious questions going to the merits of his habeas petition. He alleges that Respondents revoked his parole and detained him without written notice or a hearing before a neutral decisionmaker—process he contends is required under the Due Process Clause. Dkt. No. 1 ¶ 2; Dkt. No. 2 ¶¶ 14–17. He further alleges that on November 7, 2025, Respondents emptied his commissary account, which he argues indicates imminent removal or transfer. Dkt. No. 2 ¶¶ 5, 8, 22–23.

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 3

Lopez contends it is DHS's pattern and practice to empty detained persons' commissary accounts before removal or transfer proceedings. Dkt. No. 1-3 at 2; Dkt. No. 2 ¶ 5.

Respondents do not dispute these allegations. Nor does their opposition address whether Lopez's detention without notice or a hearing violated his due process rights. The Court credits Lopez's allegations and finds that they raise serious questions about whether Respondents have violated his constitutional due process and statutory rights by detaining him without notice and a hearing and by attempting to transfer or remove him from the NWIPC without adequate notice.

The second *Winter* factor—irreparable harm—tips in favor of a TRO. Lopez alleges that transfer to another facility would separate him from his legal counsel, who practices in Washington and has an existing attorney-client relationship with him. Dkt. No. 2 ¶¶ 23, 26. He contends that transfer would "severely impair, if not cut, his ties with his legal and social supports," thus undermining his ability to vindicate his rights in this Court. *Id.* ¶ 23.

Respondents argue that Lopez's harms are "vague and speculative" because he has not shown how transfer would interrupt his communication with counsel. Dkt. No. 7 at 2–3. But this argument underestimates the practical difficulties that transfer creates for detained litigants. As courts have recognized, transferring a habeas petitioner away from counsel and family disrupts the attorney-client relationship and interferes with the orderly administration of pending litigation. *See, e.g., Hernandez v. Sessions,* 872 F.3d 976, 995 (9th Cir. 2017) (recognizing as irreparable harms "the economic burdens imposed on detainees and their families

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 4

as a result of detention, and the collateral harms to children of detainees whose parents are detained."); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *7 (N.D. Cal. Aug. 21, 2025) ("Here, the Court finds that equities strongly favor Petitioner remaining in this District pending the resolution of this matter because this will expedite resolution of this matter, [and] provide Petitioner ready access to medical and legal services….").

Moreover, Lopez's underlying claim involves the alleged deprivation of constitutional rights. Dkt. No. 2 ¶ 4. Lopez alleges that he was detained without notice or a hearing before a neutral decisionmaker, violating his due process rights. Dkt. No. 1 ¶ 2. "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (citation modified). *Hernandez*, 872 F.3d at 995 (recognizing that immigration detention can impose irreparable harms on non-citizens who remain in custody, including economic hardships and negative effects on other aspects of human welfare).

The final two *Winter* factors merge when the government is a party. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020). These factors tip sharply in Lopez's favor. Transfer to another facility threatens Lopez's ability to challenge his allegedly unlawful detention, as described above. Continued detention also deprives Lopez of his liberty. Respondents have neither alleged nor shown any hardships they would suffer from maintaining Lopez at NWIPC during the brief period before the Court decides the merits of his habeas petition. And the public interest favors ensuring that individuals are not deprived of liberty through

processes that may violate constitutional guarantees. *See Hernandez*, 872 F.3d at 996.

### 4. CONCLUSION

In sum, the Court GRANTS Petitioner's motion for a temporary restraining order. Dkt. No. 2. Respondents and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert or in participation with them are immediately ENJOINED from transferring Petitioner from the Northwest ICE Processing Center to another facility during the pendency of these proceedings, unless necessary for medical evaluation, medical treatment, or release, or unless further ordered by this Court.

No security bond is required under Federal Rule of Civil Procedure 65(c) because Respondents face no realistic likelihood of harm from enjoining their conduct. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

Respondents have filed a Return on the merits of the habeas petition, Dkt. No. 10, and the petition will be ripe for decision on December 1, 2025. Because the Court will soon decide the merits of this case, this TRO will remain in effect pending resolution of the habeas petition.

Dated this 26th day of November, 2025.

Jamal N. Whitehead
United States District Judge